UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| STATE OF NEVADA ex rel. BARRETT BATES et al., | ) ) ) | |
| Plaintiffs, | ) ) | 3:10-cv-00407-RCJ-VPC |
| vs. | ) ) | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. et al., | ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This is a qui tam action brought by Plaintiff Barrett Bates on behalf of all seventeen of Nevada's counties (the "Counties") pursuant to Nevada's False Claims Act ("FCA"), Chapter 357 of the Nevada Revised Statutes ("NRS"). The Court previously denied Plaintiffs' Motion to Remand and ordered Plaintiffs to show cause why the action should not be dismissed under Rule 12(b)(6). Plaintiffs have moved to reconsider denial of remand. For the reasons given herein, the Court denies the motion to reconsider and dismisses the case.

**I.    FACTS AND PROCEDURAL HISTORY**

In the Third Amended Complaint ("TAC"), filed in state court, Plaintiffs allege Defendants made reverse false claims by failing to record assignments of interests in mortgages, in order to avoid county recording fees. Defendants removed based on diversity of citizenship, and Plaintiffs moved to remand for lack of subject matter jurisdiction because of the presence of

non-diverse forum Defendants. The Court declined to remand, finding that the forum Defendants had been fraudulently joined because no FCA claim could lie against them based on their failure to record the assignment of an interest in a mortgage, because recordation was optional under the statutes. The Court also ordered Plaintiffs to show cause why the entire action should not be dismissed for this reason. Plaintiffs have filed a motion to reconsider.

## II.     LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The party asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen*, 511 U.S. at 377. Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Additionally, a court may raise the question of subject matter jurisdiction sua sponte at any time during an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who raises the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

A district court's jurisdiction extends to cases removed from state court under particular circumstances. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). In cases removed from state court, a federal court later finding a lack of subject matter jurisdiction does not dismiss, but must remand to state court. 28 U.S.C. § 1447(c).

A defect in removal exists where jurisdiction is predicated purely on diversity and one or

more defendants is a citizen of the forum state. *See* § 1441(b). This is the "forum defendant" rule. However, the citizenship of a defendant who has been fraudulently joined is discounted. *Ritchie v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Where fraudulent joinder is alleged, a court does not take the allegations of citizenship in the complaint as true but permits the defendant seeking removal to present facts showing fraudulent joinder. *See id.* "Joinder is fraudulent [i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (citations and internal quotation marks omitted) (alteration in original).

## III. ANALYSIS

As to the motion to remand, Plaintiffs argue that the Court should remand in order to permit the state trial court to rule on the state claim. As to the merits of the case, Plaintiffs argue that they meant to allege not only that the failure to record the assignment of mortgages deprived the Counties of recording fees, but that in cases where an entity that is not the trustee, beneficiary, or agent thereof forecloses non-judicially by filing a notice of default, *see* Nev. Rev. Stat. § 107.080(2)(c), that entity and/or the beneficiary have deprived the respective county of recording fees, because in order to properly foreclose the proper entity would have had to file a new notice of default.

### A. Remand

Plaintiffs are correct that doubt over federal subject matter jurisdiction must be resolved against the party asserting it. In removal cases, that party is the defendant. But there is no doubt that Nevada law does not require the recordation of the transfer of an interest in land, and hence the failure to record such a transfer cannot constitute a reverse false claim. Nor is there doubt, *see infra*, that the alternative reverse false claim theory Plaintiffs argue in the present motion is not viable. Because there is no doubt that no such claims lie against any defendants, including

1  the forum defendants, the latter are fraudulently joined, and there is therefore complete diversity.
2  Although the Court indicated that it believes no FCA claims lie against any Defendants in this
3  case, the joinder of Silva and Cooper is still properly alleged to be fraudulent, because they are
4  the only non-diverse Defendants, and the putative liability of the other Defendants is based on
5  those other Defendants' own actions and omissions and is not contingent on Silva's or Cooper's
6  liability. *Cf. Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 153–54 (1914) (holding that the
7  fraudulent joinder doctrine was inapplicable where the diverse defendants' passive liability was
8  wholly derivative of the non-diverse defendants' active liability).  Silva and Cooper are alleged
9  to have acted only in their capacities as agents of the other Defendants, and it is the latter who
10 are alleged to have personally owed the recording fees.  Even if the reverse false claims in this
11 case were viable against the bank Defendants for their failure to command Silva and Cooper
12 (their agents) to record assignments of mortgages or to re-record notices of default, those claims
13 would not lie directly against Silva and Cooper as agents because an agent cannot be liable for
14 the principal's omission to command the agent.

15     Plaintiffs repeatedly argue in the present motion, as they argued in their original motion
16 to remand, that the state court had jurisdiction over this case.  This is correct, but irrelevant.  The
17 original jurisdiction of the state court is neither in doubt nor at issue.  As a court of general
18 jurisdiction, the state trial court presumably had original jurisdiction over this case. *See* Nev.
19 Const. art. VI, § 6, cl. 1.  In removal cases, the question is not whether the state court itself has
20 jurisdiction over the subject matter, but whether the federal court *also* does. *See* 28 U.S.C.
21 § 1441(a).  If so, the properly joined and served defendants may chose to remove the case to
22 federal court. *See id.*  Plaintiffs argue as if removal jurisdiction were absent wherever a state
23 court has original jurisdiction over a case. (*See* Mot. to Recons. 11:17–19, Mar. 21, 2011, ECF
24 No. 43 ("At no time did Defendants argue or this Court find that the State Court did not have
25 jurisdiction over this matter.  This Court could not make such a finding because the State Court

1  does have jurisdiction over this matter.")). Plaintiffs continue: "[T]his Court leapt to dismissal without considering the State Court's right, upon remand, to interpret its own laws." (*See id.* 11:20–21). The state court indeed has the right—more accurately, the duty—to interpret state law upon remand, and this Court has a similar duty to interpret state law upon removal. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). But Plaintiffs have no right to a remand unless federal jurisdiction is lacking, and after removal it is this Court, not the state court from which the case was removed, that must determine whether there is federal jurisdiction. *See* 28 U.S.C. § 1447(c).

Plaintiffs implicitly ask the Court to adopt a new theory of abstention,[1] under which a federal trial court faced with a fraudulent joinder argument on a motion to remand would: (1) stay the case; (2) remand to the state trial court for Rule 12(b)(6) rulings on the claims brought against the allegedly fraudulently joined defendants; and (3) rule on the original remand motion in light of the state trial court's merits rulings. The Court declines this invitation. The determination of a state law issue by the state trial court on remand would not settle the question with any more authority or clarity than would this Court's direct determination, because neither determination is binding as a rule of law. Only a state appellate or supreme court's determination of state law is binding, and it is equally binding on both state and federal trial

---

[1] Under "*Pullman* abstention," for example, a federal court stays a case and retains jurisdiction to permit questions of state law to be litigated in a separate action in state court so that the state court may interpret the state's own law before the federal court determines the law's constitutionality. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). "*Pullman* allows postponement of the exercise of federal jurisdiction when a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law." *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 801 (9th Cir. 2001) (quoting *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir. 1984)) (internal quotation marks omitted). *Pullman* abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959).

courts. At most then, an appropriate abstention doctrine would entail certification to the state supreme court of the state law question that affects the fraudulent joinder determination. Since oral argument, Plaintiffs have moved for the Court to certify to the Nevada Supreme Court the question of whether a foreclosure is invalid if the wrong party files the notice of default such that a new notice of default must be recorded for a proper foreclosure. The Court decides the present motion assuming, as it has ruled in the past, that the Nevada Supreme Court would answer the question "yes." However, this result does not make a reverse FCA claim viable in the present context.

**B.     The Merits**

In their new theory of the case—and the present motion does not constitute an amendment of the TAC—Plaintiffs argue that in cases where an entity that is not the trustee, beneficiary, or agent thereof forecloses non-judicially by filing a notice of default, *see* Nev. Rev. Stat. § 107.080(2)(c), that entity and the beneficiary have deprived the respective county of recording fees, because in order to properly foreclose the proper entity would have had to file a new notice of default and pay a new recording fee. There are several problems with this theory. First, the failure to file a new notice of default does not constitute a false assertion of "entitlement to obtain or retain government money or property," as is required for a reverse false claim. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, Nos. 09-16181, 09-16607, 09-17710, --- F.3d ----, 2011 WL 1053366, at *4–5 (9th Cir. Mar. 24, 2011). The allegedly false statements here were made in the improper notices of default themselves, but Plaintiffs do not allege that any Defendant failed to pay recording fees for the defective notices of default.

Second, Plaintiffs also seem to argue that in cases with defective notices of default, the subsequent recordation of notices of trustee's sale constitute false statements depriving the Counties of fees, because the foreclosing beneficiary would have to file, or direct its trustee or other agent to file, a new notice of default in order to comply with section 107.080(2)(c). Thus,

1 the argument goes, proceeding to sale based on a defective notice of default deprives a county of
2 fees. Plaintiffs conflate the right of a mortgagor to a statutorily proper foreclosure with the right
3 of a county to fees upon the filing of a notice of default (or other documents). The Counties
4 have no standing to assert on behalf of a mortgagor that a defect in a notice of default renders a
5 foreclosure invalid. No court may declare such a sale void unless an action is instituted within
6 ninety days of the trustee's sale by a party with standing. *See* Nev. Rev. Stat. § 107.080(5)(b). In
7 wrongful foreclosure cases—and this Court has seen scores, if not hundreds—foreclosure is
8 stopped if invalid and allowed to proceed if proper, so a putative reverse FCA claim based on a
9 defective notice of default necessarily becomes moot in any case where a party with standing to
10 challenge the impropriety of the notice of default has brought a case. If a foreclosure is proper,
11 the County is not aggrieved because there is no need to file another notice of default. If a
12 foreclosure is improper because of a defective notice of default, the court enjoins foreclosure
13 unless and until a proper entity files a new notice of default or the case is otherwise settled in a
14 way obviating the need for one, and the county is again not aggrieved. The Counties are
15 disinterested third parties insofar as the statutory propriety of foreclosure goes. The county
16 recorders in Nevada and other states operate essentially as data custodians and bulletin board
17 services, charging fees in exchange for granting the payee the legal effect of having put the
18 world at large on constructive notice of the contents of its filing, whether the filing itself is
19 legally accurate or not. *See DaSilva v. Wells Fargo Bank, N.A.*, No. 3:10-cv-00381-RCJ-VPC,
20 2011 WL 221718, at *3–4 (D. Nev. Jan. 19, 2011) (citing 11 David A. Thomas, *Thompson on*
21 *Real Property* § 92.04(a), at 99 (2d Thomas ed., The Michie Co. 1994)). The Counties do not
22 vouch for the accuracy of the documents, and they cannot be aggrieved by inaccuracies in
23 filings, except in cases where an inaccuracy directly concerns a county as property owner vice
24 recorder.
25     Third, a reverse false claim must be based on a "present, affirmative duty," not a

"contingent" duty. *Int'l Game Tech., Inc. v. Second Judicial Dist. Court of Nev.*, 127 P.3d 1088, 1103 (Nev. 2006). The Nevada Supreme Court interprets the reverse false claims provision narrowly, as federal courts interpret the federal reverse false claims provision. *Id.* "[I]n Nevada, reverse false claims must be based upon an affirmative duty to pay, such as that imposed under a statutory or regulatory scheme." *Id.* Plaintiffs argue that the beneficiaries of the loans had an absolute statutory duty to ensure that a proper entity re-filed notices of default before proceeding to trustee's sales. But such a duty is separate from the duty to pay a recording fee upon filing, which is a contingent duty.

Finally, even assuming the two duties—the absolute duty to foreclose properly according to statute and the contingent duty to pay filing fees upon filing a notice of default—are inextricably linked, accepting Plaintiffs' reverse false claims theory as a legal matter would make their claims factually impossible. Plaintiffs' theory of the case is: (1) Bank (the beneficiary) commands Filer to file a notice of default; (2) Filer, however, is not the trustee; (3) under section 107.080(2)(c), the beneficiary or trustee must file the notice of default before a trustee's sale may occur; therefore (4) Bank must command the proper trustee or some other agent to file a notice of default and pay the attendant recording fees again before a sale may occur; so (5) if Bank proceeds with foreclosure without doing this, it has deprived the county of fees based on a notice of default and/or notice of sale that falsely identifies the trustee. It is the beneficiary who is alleged to owe the fees, because it is the beneficiary who is the real party in interest in foreclosure. But any party that a beneficiary commands to file a notice of default is by the law of agency a proper party to file it, because such a party is the agent of the beneficiary, who is a proper party under section 107.080(2)(c). Insofar as the recording fees can be viewed as an absolute duty, and not a contingent one, it is the beneficiary who owes them, and any party it commands to file a notice of default is by that fact alone a proper party as the beneficiary's agent. Even in the extreme and rare case where a rogue title company files a notice of default

1  without the knowledge of the beneficiary—the Court has not yet seen such a case—the filing
2  becomes proper if the beneficiary later ratifies the act after discovering what has occurred. *See*
3  *Edwards v. Carson Water Co.*, 34 P. 381, 386–89 (Nev. 1893). Plaintiffs allege that the
4  beneficiaries in these cases willfully proceed to foreclosure despite knowing that an entity that
5  was not the trustee has filed the notice of default. But that willfulness is called ratification, and
6  it cures an otherwise defective filing even where the purported agent was not in fact an agent
7  when it acted. *See* Restatement (Third) of Agency § 4.03 ("A person may ratify an act if the
8  actor acted *or purported to act* as an agent on the person's behalf." (emphasis added)). A
9  beneficiary may therefore proceed with foreclosure based on the filing of a notice of default by a
10 party that purported to be its agent or trustee but was not, so long as the beneficiary ratifies the
11 action. "A person may ratify the act of an agent or the act of a person who purported to be an
12 agent but was not." *Id.* at § 4.03 cmt. b. A later-executed substitution of trustee making the
13 notice of default filer the new trustee before proceeding to sale is practically insurmountable
14 evidence of ratification, and as Plaintiffs note (and in fact document in their motion), the
15 beneficiaries in these cases typically execute such substitutions.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 43), Motion to Certify (ECF No. 50), and Motion to Amend (ECF No. 53) are DENIED.

IT IS FURTHER ORDERED that the case is DISMISSED.

IT IS SO ORDERED.

Dated this 22nd day of April, 2011.

_____
ROBERT C. JONES
United States District Judge